# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**KANAWHA HOSPICE CARE, INC.,**
**Employer Below, Petitioner**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-187**      (JCN: 2021020921)

**JEANNIE D. BOSTIC,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kanawha Hospice Care, Inc. ("KHC") appeals the April 10, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Jeannie D. Bostic filed a response.[1] KHC did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order; adding C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome as compensable conditions in the claim; and modifying the order to reflect that cervical facet sprain was included under the compensable diagnosis of neck strain.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 11, 2021, Ms. Bostic, a CNA for KHC, was lifting a patient onto a gurney when she felt pain in her neck and shoulder. Ms. Bostic presented to the emergency room ("ER") the next day and complained of a neck injury sustained at work, though the records indicate that she also complained of pain in the right trapezius muscle. A CT scan revealed disc space narrowing with osteophytic lipping most pronounced at C6-C7 and C5-C6, and osteophytic encroachment into the spinal canal on the left at C5-C6. ER staff diagnosed her with a cervical sprain and helped Ms. Bostic complete an Employees' and Physicians' Report of Occupational Injury form, which indicated the same diagnosis.

Ms. Bostic followed up with Raina M. Holland, PASUP, on April 15, 2021, and reported blurred vision; decreased range of motion and weakness in her right upper

---

[1] KHC is represented by Charity K. Lawrence, Esq. Ms. Bostic is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

1

extremity; and pain, pressure, and weakness in her neck. Ms. Holland diagnosed cervical radiculopathy and an "[a]ccident while engaged in work-related activity." On April 29, 2021, Ms. Bostic returned to see Ms. Holland and reported that she had increased pain in her right shoulder, a feeling of tightness at the base of her neck, difficulty sleeping due to pain, and a dull headache. Ms. Holland made a referral for an MRI and a neurosurgery consultation.

By order entered on May 14, 2021, the claim administrator held the claim compensable for strain of muscle, fascia, and tendon at neck level. Ms. Bostic was treated by George B. Bryant, PASUP, on May 14, 2021. Ms. Bostic continued to complain of pain in her neck and right upper extremity, limited range of motion in the right upper extremity, and headaches, and noted that she was now experiencing dizziness. Mr. Bryant diagnosed cervical radiculopathy.

On June 4, 2021, Ms. Bostic underwent an MRI of the cervical spine that revealed mild to moderate left posterolateral osteophyte formation with disc bulging at the C5-C6 level and a small left lateral disc herniation causing mild to moderate flattening of the left anterior aspect of the cord and mild compression of the left C6 nerve root. The impression was cervical spondylosis with spinal cord flattening, foraminal narrowing, and nerve root compression related to the disc herniation.

Ms. Bostic returned to Mr. Bryant on June 21, 2021. Mr. Bryant diagnosed cervical radiculopathy, "[a]ccident while engaged in work-related activity," cervical nerve root compression, and cervical spondylosis. Subsequently, on June 30, 2021, Ms. Bostic was seen by Rajesh V. Patel, M.D., who noted degenerative changes in the cervical spine per the x-ray. Dr. Patel further noted the MRI revealed disc protrusion at C5-C6 with a small herniation at C5-C6 on the left side with mild to moderate flattening of the left anterior aspect of the cord, left C6 compression, and C6-C7 protrusion with mild flattening of the cord. Dr. Patel diagnosed cervical disc herniation C5-C6 left side, left C6 radiculitis, cervical facet sprain, and cervical disc protrusion at C5-C6 and C6-C7, and he recommended conservative treatment.

On July 15, 2021, Dr. Patel performed bilateral cervical medial branch nerve blocks at C4-C5, C5-C6, and C6-C7. The postoperative diagnoses were cervical sprain, cervical facet sprain, cervicalgia, and cervical disc bulging. Ms. Bostic saw Dr. Patel for a follow up on April 16, 2021, and reported that the medial branch nerve blocks helped, but that the pain, including that in her left shoulder, was beginning to return. Dr. Patel diagnosed cervical disc bulging at C5-C6, left side; cervical sprain; left C6 radiculitis; cervical facet sprain; cervical disc protrusions at C5-C6 and C6-C7; and right rotator cuff syndrome.

Ms. Bostic was examined by B.K. Vaught, M.D., a neurologist, on August 26, 2021. Dr. Vaught performed an EMG study, which revealed active left C5-C6 radiculopathy and mild bilateral carpal tunnel syndrome. On September 2, 2021, Dr. Patel again performed

2

cervical medial branch nerve blocks at C4-C5, C5-C6, and C6-C7. On October 5, 2021, Ms. Bostic underwent an independent medical evaluation ("IME") performed by David L. Soulsby, M.D. Dr. Soulsby diagnosed cervical sprain/strain and degenerative disc disease of the cervical spine, which he opined was a preexisting condition. Dr. Soulsby opined that Ms. Bostic had reached maximum medical improvement and that she needed no additional treatment for her compensable injury.

Ms. Bostic followed up with Dr. Patel on November 3, 2021, and reported minimal discomfort depending on the activity. Dr. Patel's assessment remained largely the same, and he requested that C5-C6 disc bulge, C6 radiculitis, cervical facet sprain, and right shoulder rotator cuff syndrome be added as compensable conditions in the claim.

On February 10, 2022, Rebecca Thaxton, M.D., performed a physician review wherein she addressed whether the conditions requested by Dr. Patel should be added to the claim. Dr. Thaxton opined that the medical evidence did not support cervical radiculopathy, as exams conducted in October and November of 2021 were negative for radiculopathy. Dr. Thaxton further opined that the evidence did not support adding rotator cuff syndrome to the claim as it was not temporally related, stating "[a]cute injuries cause acute conditions" and that the medical evidence showed bilateral shoulder range of motion was symmetric. Regarding the cervical disc bulges and cervical facet changes, Dr. Thaxton noted that these conditions were degenerative processes that preexisted the injury in the claim. She stated that a temporary flareup of the degenerative condition would not mean that the degenerative condition itself was attributable to the compensable injury. Lastly, Dr. Thaxton noted that cervical facet sprain need not be added to the claim as treatment guidelines for the compensable cervical sprain had been exceeded.

By order dated February 15, 2022, the claim administrator denied Dr. Patel's request to add C5-C6 disc bulge, C6 radiculitis, cervical facet sprain, and right shoulder rotator cuff syndrome to the claim. The Encova Select Grievance Board determined that the claim administrator's order was appropriate, and the claim administrator issued an order affirming its prior decision on March 23, 2022. Ms. Bostic protested.

On June 13, 2022, Dr. Patel authored correspondence wherein he opined that the requested conditions were attributable to the compensable injury. Dr. Patel noted that Ms. Bostic had clinical signs consistent with C6 radiculitis as well as symptoms consistent with cervical facet sprain. Dr. Patel noted that the MRI of Ms. Bostic's cervical spine revealed a disc protrusion with a small herniation of C5-C6 with impingement of the left C6 nerve root, which is consistent with left C6 radiculitis. Further, Dr. Patel noted that Ms. Bostic initially reported right shoulder pain and that her shoulder pain became more apparent as the pain in her cervical spine subsided. Dr. Patel concluded, "[t]aking into consideration Ms. Bostic's symptoms, I believe Ms. Bostic did have a discrete injury" and once again recommended adding the requested conditions as compensable in the claim.

According to the Board's order, KHC also submitted medical records predating the compensable injury. However, KHC failed to include those medical records in the appendix record on appeal.

By order dated April 10, 2023, the Board reversed the claim administrator's March 23, 2022, order which denied Dr. Patel's request to add conditions to the claim, and added C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome as compensable conditions in the claim. The Board modified the claim administrator's order regarding the denial of the request to add cervical facet sprain to reflect that it would not be added as a distinct compensable diagnosis as it was included under the compensable diagnosis of neck strain.

Citing to *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) and *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), the Board found that the medical evidence indicated that Ms. Bostic experienced discrete new injuries that should be held compensable. While KHC submitted medical records predating the injury, the Board found that no diagnoses or assessments beyond pain and osteoarthritis had been made, and no imaging studies predating the injury were submitted.

The Board found that the C6 bulge and the C6 radiculitis diagnoses were discrete new injuries, noting that Dr. Patel attributed the disc bulge and radiculitis to the compensable injury. The Board also noted the MRI (which revealed a disc herniation compressing the C6 nerve root) and the EMG study (which confirmed active C6 radiculopathy) and found that this evidence failed to establish that either the disc bulge or radiculitis preexisted the claim. Although Dr. Soulsby assessed Ms. Bostic with only a cervical sprain/strain and degenerative disc disorder, the Board found that he rendered no opinion on whether the conditions requested by Dr. Patel should be added to the claim. Further, though Dr. Thaxton found that some physical examinations failed to support a finding of radiculopathy, the Board found that the EMG study clearly revealed active left C5-C6 radiculopathy. The Board also found that although Dr. Thaxton opined that the C5-C6 disc bulge predated the compensable injury, no medical record or imaging study was submitted into the record demonstrating such. Accordingly, the Board added C6 bulge and the C6 radiculitis as compensable conditions in the claim.

Regarding right shoulder rotator cuff syndrome, the Board likewise found this diagnosis to be a discrete new injury. The Board found that, contrary to Dr. Thaxton's opinion that the diagnosis was not suggested early in the claim, the medical record indicated that Ms. Bostic had complaints of right shoulder pain at the time the claim was filed, and that Dr. Patel explained her reports of increased pain could be attributed to her neck pain subsiding due to the medial branch blocks, allowing her shoulder pain to become more apparent. The Board found Dr. Patel's opinion sufficiently explained any delay in reports of shoulder pain and, ultimately, found that right shoulder rotator cuff syndrome should be added to the claim.

4

Lastly, the Board found that cervical facet sprain would not be added as a separate diagnosis in the claim given that neck strain was compensable. KHC now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, KHC argues that the Board erred in reversing the claim administrator's order and adding C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome as compensable conditions in the claim. According to KHC, the Board erroneously concluded that Ms. Bostic's disc herniation and radiculitis did not predate the injury. KHC argues that the MRI revealed degenerative conditions not attributable to the work-related injury, and Dr. Soulsby diagnosed multilevel degenerative disc disease.[2]

KHC also argues that Ms. Bostic's shoulder symptoms did not immediately appear following the work-related injury. KHC notes that the shoulder was not included on the Employees' and Physicians' Report of Occupational Injury and the ER records indicate that Ms. Bostic suffered a neck injury with pain that did not radiate. KHC argues that when Ms. Bostic finally raised complaints of her right shoulder pain, no mention of a rotator cuff injury was made. It was not until almost seven months following the injury that Dr. Patel diagnosed rotator cuff syndrome, despite the prior physical exams of the shoulder being normal.

---

[2] KHC also references medical records predating the work-related injury which it claims demonstrates that Ms. Bostic was previously symptomatic in her neck and right shoulder. However, KHC failed to include these records in the appendix record on appeal.

KHC argues that, in sum, Ms. Bostic was symptomatic in her neck and shoulder prior to the injury and that any symptoms related to her rotator cuff did not immediately appear and continuously manifest following the injury. KHC thus concludes and argues here that Ms. Bostic has failed to demonstrate that she is entitled to the rebuttable presumption set forth in *Moore*, that the Board should have found that her current symptoms are the result of a preexisting condition, and that her diagnoses are not compensable in the claim. We disagree.

In order for a claim to be held compensable under the Workers' Compensation Act, three elements must coexist: (1) A personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Jordan v. State Workmen's Comp. Comm'r*, 156 W.Va. 159, 163, 191 S.E.2d 497, 500 (1972) (citation omitted). The Supreme Court of Appeals of West Virginia ("SCAWV") has set forth a general rule that:

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. *To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable*.

*Gill*, 236 W. Va. at 738, 783 S.E.2d at 858, syl. pt. 3 (emphasis added). The SCAWV expounded on *Gill* in *Moore*, holding that:

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

247 W. Va. at 294, 879 S.E.2d at 781, syl. pt. 5.

Most recently, this Court explained that:

> [a] preexisting condition itself does not become compensable, only the discrete new injury. *Moore* reaffirmed and expanded on the holding in *Gill* and therefore the holdings in both cases must be considered together. When read in unison, *Gill* and *Moore* do not render preexisting injuries

6

compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury.

*Blackhawk Mining, LLC v. Argabright*, __ W. Va. __, __ S.E.2d __, 2023 WL 3167476 (Ct. App. 2023).

Here, the Board found that the C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome did not preexist the claim and, rather, were discrete new injuries. While KHC argues that evidence such as the MRI and Dr. Soulsby's report establish that these diagnoses preexisted the claim, the Board disagreed. The Board noted that the medical records dated before the compensable injury contained no diagnosis apart from pain and no imaging studies performed prior to the compensable injury were submitted. The MRI performed after the injury revealed a disc herniation compressing the C6 nerve root on the left, and the EMG study confirmed active radiculopathy. While Dr. Soulsby diagnosed degenerative conditions, the Board found that he rendered no opinion as to whether C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome should be added as compensable conditions in the claim. The Board was likewise not persuaded by Dr. Thaxton, who opined that there was no evidence of radiculopathy. However, the EMG study rebutted her opinion. Conversely, Dr. Patel, Ms. Bostic's treating physician, opined that the requested conditions were discrete, new injuries that were attributable to the compensable injury. The Board concluded that there was no assessment, diagnosis, or imaging study revealing that these conditions preexisted the claim. Upon review, we cannot conclude that the Board was clearly wrong in determining that the evidence demonstrates that the C6 bulge, C6 radiculitis, and the right shoulder rotator cuff syndrome were sustained in the course of and resulting from Ms. Bostic's employment.

While KHC argues that Ms. Bostic's rotator cuff condition was not reported immediately after the injury and was not diagnosed until nearly seven months after the injury, thereby diminishing the likelihood that the condition was related to the compensable injury, these assertions are not supported by the record. While no shoulder diagnosis was initially given, the ER records indicate that Ms. Bostic reported pain in the trapezius muscle of her shoulder. Ms. Bostic also reported right upper extremity pain to Ms. Holland during their initial encounters. Further, Dr. Patel provided an explanation for any delay in symptoms related to Ms. Bostic's rotator cuff syndrome, which the Board found to be reasonable. Specifically, Dr. Patel explained that as Ms. Bostic's neck symptoms subsided, her right shoulder pain became more apparent.

Based on the foregoing, we find that the Board's findings regarding compensability of the C6 bulge, C6 radiculitis, and right shoulder rotator cuff syndrome are sufficiently supported by the evidence. There simply is no conclusive evidence that these diagnoses preexisted the claim, and Dr. Patel opined that they resulted from the compensable injury. Coupling this evidence with KHC's failure to provide any medical records preexisting the

compensable injury in the appendix record, we conclude that it has failed to demonstrate that the Board's order was clearly wrong.

Accordingly, based on the foregoing, we affirm the Board's April 10, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen